FILED

2012 Aug-31  PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **HAYZEN TURNER, JR.,** | ) | |
| | ) | |
| **Movant/Defendant,** | ) | |
| | ) | |
| **v.** | ) | **2:09-CV-8006-VEH-PWG** |
| | ) | **(2:07-CR-114-VEH-PWG)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

Hayzen Turner, Jr. is serving a life sentence imposed by this court following his plea of guilty to a 10-count indictment charging him with federal drug and weapons offenses. He initiated this action by filing a *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Civ. Doc. 1; Crim. Doc. 78 )[1]. He has since filed seven other documents, styled either as formal motions or legal memoranda, in which he seeks, expressly or impliedly, to assert additional claims or make additional allegations in support of § 2255 relief. (Civ. Docs. 7, 11, 12, 13, 14, 15, and 16). Upon consideration, the court concludes that Turner's pending motions for leave to amend and supplement are due to be granted to allow

---

[1]Citations to "Civ. Doc(s) ___ " are to the document numbers assigned by the clerk to the pleadings in the court file of this § 2255 "civil" case, 2:09-CV-8006-VEH-PWG, as reflected on the docket sheet. Citations to "Crim. Doc. ___ " are to the document numbers in the underlying "criminal" case, 2:07-CR-114-VEH-PWG.

consideration of all claims, but that all of his claims for relief under § 2255 are due to be denied.

## I.  BACKGROUND

### A.  The Criminal Case

On March 30, 2007, a grand jury returned a 10-count indictment against Turner.  (Crim. Doc. 1).  Counts 1, 2, and 3 charged him with distribution of a mixture and substance containing cocaine  base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Counts 4 and 5 charged distribution of 50 grams or more of a such a substance and mixture, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  Count 6 charged possession with intent to distribute a mixture and substance containing cocaine base, cocaine hydrochloride, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Count 7 charged Turner with carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Finally, Counts 8, 9, and 10 charged possession of a firearm after previous conviction of a felony, in violation of 18 U.S.C. § 922(g)(1).  Attorney Russell Steen was appointed to represent Turner, who initially pled not guilty.

Steen filed a variety of discovery and other pre-trial motions.  Those included a motion to suppress evidence obtained pursuant to two state search warrants (Crim. Doc. 15), a motion for leave to hire an investigator (Crim. Doc. 16), and three

motions in limine.  (Crim. Docs. 34, 36, 37).  The defense argued that the affidavits used to obtain the search warrants (*see* Crim. Docs. 19-1, 19-2) failed to demonstrate probable cause.  (Crim. Doc. 15).  The court denied the motion to suppress (Crim. Docs. 24, 35), but granted the motion for an investigator as well as a motion in limine related to the use of power company records to show Turner's "ownership" of searched premises.  (Unnumbered margin entries in criminal case dated 7/2/2007; Crim. Doc. 52).

The case went to trial before the undersigned on July 11, 2007, with the selection of a jury, opening statements, and the commencement of the Government's case.  The prosecution continued with its presentation the following day.  On July 13, 2007, the Government rested, having presented 17 witnesses and 120 exhibits.  At that time, Turner advised the court of his desire to enter into a plea agreement.  That same day, Turner signed a plea agreement (Crim. Doc. 47 ("Plea Agreement")) and a "Guilty Plea Advice of Rights Certification" form (Crim. Doc. 48 ("Rights Certification")), and he pled guilty. (Crim. Doc. 80 ("Guilty Plea Hearing Transcript" or "Plea Trans.").  At that plea hearing, Turner admitted to the following facts as alleged by the Government:

> In the late Fall of 2006, agents with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) and investigators with the Birmingham Police Department (BPD) received information from a

confidential source (hereinafter referred to as, "CS#1") that defendant, Hayzen Turner, Jr., a convicted drug trafficking felon, was a major source of supply for cocaine, to include crack cocaine, in the Birmingham, Alabama area. In or around this same time period, agents with the Drug Enforcement Administration (DEA) received information from a different confidential source (hereinafter referred to as, CS#2) that Hayzen Turner, Jr., was in the business of selling large amounts of "crack" cocaine. Both sources described Turner as the owner and operator of "Turner Auto," a used car lot located 2156 Vanderbilt Road in Birmingham, Alabama. According to both sources, Turner utilized his business and his home as bases of operation from which he engaged in the sale of illegal narcotics. Shortly after receiving this information, and unknown to one another, both agencies began preparing to use their respective sources to effect the controlled purchase of "crack" cocaine from the defendant.

In early December 2006, CS#1 advised BPD and ATF that he/she could purchase "crack" cocaine directly from Turner. In order to arrange a deal, CS#1 made a number of telephone calls to Turner in which the two discussed the sale of a few "crack" rocks for $125. On December 5, 2006, agents gave CS#1 $125 in recorded task force funds. Prior to leaving for the deal, CS#1 and his/her vehicle were searched for any weapons, money or other contraband, with none found. Initially, the transaction was supposed to take place at the residence located at 3515 34th Avenue North in Birmingham, Alabama, however, Turner later contacted CS#1 to move the meet location to a laundry mat located at the 3000 block of 12th Avenue North in Birmingham. CS#1 was observed meeting with the defendant, Hayzen Turner, Jr., at a laundry mat. Turner approached CS#'s vehicle and gave CS#1 a small amount of suspected "crack" cocaine. Once at the neutral location, CS#1 turned over approximately 2 grams of "crack" cocaine. The substance was tested confirming the presence of cocaine base, or "crack" cocaine.

The next day, December 6, 2006, CS#1 again informed ATF agents that he/she could purchase more "crack" from Turner at his place of business, Turner Automotive. In the same manner described above, CS#1 was searched and given $125 in recorded funds. Agents watched as Turner pulled up to the business in a blue pick-up truck and entered Turner Automotive. CS#1 followed Turner into the business and

emerged a short time later with what appeared to be "crack" cocaine. Once at the neutral location, the drugs were turned over to agents and tested presumptively positive for "crack" with a net wet 2.2 grams. During a debrief with agents, CS#1 advised that Turner had a small black pistol laying next to the bag from which he retrieved the "crack" cocaine.

Two days later on December 8, 2006, in a manner substantially similar to that described above, BPD officers and ATF agents gave CS#1 recorded task force funds in the amount of $300 to be used to purchase "crack" cocaine directly from Hayzen Turner, Jr. from inside Turner Automotive. Turner was again observed arriving at the business, unlocking the gate, and entering the building with CS#1 following. A short time later, CS#1 is seen coming out of the building with yet another small package which was immediately turned over to law enforcement upon arrival at the prearranged neutral location. The suspected "crack" tested presumptively positive, however, only one of the four small plastic bags was tested. The tested portion had a net weight of 1.7 grams.

Unbeknownst to agents with ATF, also on December 8, 2006, agents with DEA were preparing to arrange for a controlled purchase of 2 ounces of "crack" cocaine directly from Turner with the assistance of CS#2. On December 11, 2006, CS#2 placed a monitored and recorded telephone call to Turner in which the two agreed that CS#2 would pay $1,500 for 2 ounces of "crack" cocaine. They further agreed to meet at "the shop", meaning Turner Automotive. Prior to leaving for the deal, CS#2 was fitted with an electronic video and audio monitoring and recording device. Additionally, his/her person and vehicle were searched for any weapons, money or other contraband, with none found. Agents observed Mr. Turner arrived at the business in a champagne Chevy Tahoe, registered in his name. Turner entered the business, and shortly thereafter, CS#2 arrived and went inside. A few minutes later, CS#2 exited the building and drove his/her car to a rearranged neutral location where the suspected "crack" was immediately turned over to agents. After presumptively testing positive for "crack," the drugs were packaged and sent to the DEA drug lab where the substance was confirmed to be cocaine base or "crack" cocaine, with a net weight of 59.5 grams. During a debrief, CS#2 informed agents that Turner

5

advised that he could provide 3 or 4 more ounces of "crack" the following week.  The video recording clearly shows Hayzen Turner, Jr., handing a small package to CS#2 just moments before CS#2 then turned the package containing "crack" cocaine over to agents.

Shortly after the above referenced drug purchase, agents with ATF and DEA became aware of the other agencies' operation.  On December 19, 2006, DEA agents formulated a plan to make a controlled purchase of 3 ounces of "crack" cocaine for $2,250 from Turner with the assistance of CS#2.  On December 20, 2006, DEA agents met with CS#2 and fitted him/her with an electronic audio/video monitoring and recording device, searched his/her vehicle the same manner as previously described, and provided him/her with $2,250 in recorded funds.  CS#2 again called Turner and the two arranged to meet at "the shop," or Turner Automotive.   Agents established surveillance on Turner Automotive just prior to CS#2 leaving for the meeting.   CS#2 arrived at Turner Automotive to find a number of black males standing outside apparently waiting for Turner to arrive.  After approximately ten minutes, Turner arrived driving the same champagne colored Chevy Tahoe mentioned above.  Agents observed Turner exit the car and greet CS#2.  The two then entered the business together.  After a few minutes, CS#2 was seen coming out of the building and returning to his/her vehicle.   CS#2 drove to a prearranged neutral location where the suspected "crack" cocaine was turned over to the agents along with the $50 of the recorded funds.  According to CS#2, Turner only charged $2,200 for the "crack" cocaine.  After presumptively testing positive for "crack," the drugs were packaged and sent to the DEA drug lab where the substance was confirmed to be cocaine base, or "crack" cocaine, with a net weight of 71.4 grams.  Again, the video clearly shows Hayzen Turner, Jr. involved in the drug deal as described by CS#2.

Based upon the information detailed above, as well as other information provided by confidential sources, a State of Alabama search warrant was obtained on December 29, 2006, for Turner Automotive and the residence from which the defendant operated located at 3515 34th Avenue North in Birmingham, Alabama.  Although agents had received information from CS#1 detailing that the residence located at 3515 34th Avenue North in Birmingham was routinely used by defendant to sell controlled substances from out of the residence, at

approximately 4:00 p.m. on December 27, 2006, BPD officers, in coordination with ATF, met CS#1 for the purpose of transacting a controlled purchase of "crack" cocaine from Turner from inside the residence located 3515 34th Avenue North, Birmingham, Alabama. Later that same day, agents met with CS#1, ensured that he/she was carrying no drugs/weapons/contraband or money (with exception of the recorded funds used to effect the purchase) on his/her person or in his/her car and provided him/her with a $125 in recorded funds in order to effect the purchase of an "eight-ball,"(approx. 3.5 grams) of "crack" cocaine from inside Turner's home at 3515 34th Avenue North in Birmingham. Law enforcement surveilled CS#1 as he/she entered the residence 3515 34th Avenue North in Birmingham. A short time later, agents watched as CS#1 left the residence drove to a neutral location at which time he/she immediately turned over a small plastic bag containing an off-white rock-like substance which had an appearance and smell consistent with the "crack" cocaine. That substance was then placed into evidence and subsequently sent to the state drug testing lab for analysis. Prior to conducting this purchase and applying for the resulting search warrant, authorities contacted Alabama Power who confirmed that Hayzen Turner, Jr., was listed customer power for both buildings. This information corroborated with CS#1 had already told law enforcement regarding Turner's use of the residence and business.

The same day on which the warrant was executed, December 29, 2006, agents arrived at Turner's residence in order to execute the search warrant. Prior to executing the search warrant, agents were conducting surveillance on the residence located at 3515 34th Avenue North. They watched as Turner left the residence in a Chevy Tahoe and attempted to drive away. At that time, Birmingham Police Department (BPD) officers were aware that Turner had a number of outstanding arrest warrants, and accordingly, a traffic stop was initiated. After, being asked to identify himself, Turner was placed under arrest and searched. In his right front pants pocket, officers recovered clear plastic baggy containing what appeared to be, and was later confirmed to be, "crack" cocaine. In his left rear pants pocket, officers recovered $2,680 and $96 was recovered from his left front pants pocket. The Chevy Tahoe was inventoried prior to being towed. In Turner's wallet, agents found $500. In the middle console was a black leather change purse containing six

7

clear plastic baggies of marijuana, $149, in a magazine loaded three rounds of .380 caliber ammunition. Inside the glove box, agents found a loaded Bryco Arms .380 caliber pistol.

During a search of the residence, agents recovered various items of evidentiary value, including digital scales with drug residue, loose marijuana, a Smith and Wesson .38 caliber revolver, a Stevens .22 caliber rifle, and a number of plastic wrappers commonly used to package kilograms of cocaine.

During a search of Turner Automotive, agents recovered additional items evidentiary value, including more digital scales with drug residue, two glass beakers with cocaine residue, a Savage Arms .22 caliber rifle, a Winchester .22 caliber rifle, a Smith and Wesson .22 caliber revolver, and various documents bearing Turner's name.

Turner is a multiple convicted drug felon. On December 5, 1988, in the Circuit Court of Jefferson County, he was convicted of the offense of Violation of Alabama Uniform Controlled Substances Act (VAUCSA), case number CC 88-02316. He was also convicted on September 28, 1989, in the Circuit Court Jefferson County, Alabama, of the offense of Trafficking in Cocaine, in case number CC 89-02330, and of the offense of Receiving Stolen Property, First Degree, in case number CC 89-02331. Finally, on January 4, 2000, Turner pleaded guilty in the Circuit Court of Jefferson County, Alabama, to the offense of Possession of Cocaine, in case number CC 98-609.

All of the firearms referred to above were manufactured outside the State of Alabama, and were test-fired and found to function as designed.

(Plea Hearing at 25-34; *see also* Crim. Doc. 47, Plea Agreement, at 4-12)[2].

A little over two moths after pleading guilty, but prior to sentencing, attorney Robert A. Ratliff appeared on Turner's behalf as retained counsel. (Crim. Doc. 50). The court thus allowed Turner's appointed counsel, Steen, to withdraw. (Crim. Doc.

---

[2]Although the Government put on its case-in-chief at trial, there is no transcript of those proceedings in the record because Turner pled guilty.

8

51 and margin entry dated 9/20/2007).  As the sentencing hearing approached, Turner, through his new counsel, filed objections to the Presentence Investigation Report (the "PSI Report") and a sentencing memorandum.  (Crim. Docs. 53, 54).

In November 2007, Turner moved to withdraw his guilty plea.  (Crim. Docs. 58, 60).  Turner alleged therein that he was innocent of the crimes for which he was charged but he had been induced to plead guilty because his original counsel had provided constitutionally ineffective assistance.  In a six-page order, the court denied Turner's motion.  (Crim. Doc. 62).

On December 18, 2007, the court held a sentencing hearing and entered a final judgment.  (Crim. Doc. 81 ("Sentencing Hearing Transcript" or "Sent. Trans."); Crim. Doc. 66).  The court sentenced Turner as follows: 360 months imprisonment as to Counts 1, 2, 3, and 6; life imprisonment without release on Counts 4 and 5; 60 months on Count 7; 120 months as to Counts 8, 9, and 10.  The sentences on Counts 1 - 6 and 8 - 10 ran concurrently with each other, while the sentence on Count 7 ran consecutively to the other sentences.  The life sentences on Counts 4 and 5, alleging distribution of 50 or more grams of a substance or mixture containing cocaine base, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(A) (2007), were mandated as the product of an enhancement under 21 U.S.C. § 851 because Turner had at least two prior drug

9

felonies.  *See* 21 U.S.C. § 841(b)(1)(A).[3]

Turner appealed to the United States Court of Appeals for the Eleventh Circuit (Crim. Doc. 67), but that court dismissed the appeal on January 25, 2008, for failure to timely file a Transcript Order Form.  (Crim. Doc. 70).  More than seven months later, on October 3, 2008, Turner filed a motion to reinstate his appeal, which the Eleventh Circuit summarily denied on November 14, 2008.  (Crim. Doc. 75).  Turner did not petition for certiorari in the Supreme Court.

**B.      The § 2255 Proceeding**

On January 20, 2009, Turner filed a *pro se* motion in this court asking for an extension of the time in which he might file a motion to vacate under § 2255.  (Crim. Doc. 76).  That motion was granted.  (Crim. Doc. 77).  Turner filed his original § 2255 motion on February 23, 2009 (Crim. Doc. 78, Civ. Doc. 1), accompanied by a supporting brief.  (Crim. Doc. 79, Civ. Doc. 2 ("§ 2255 Brief")).  In that brief, Turner raised several claims asserting that his trial counsel was constitutionally ineffective for allegedly failing to do the following:

(a)      "interview or investigate government witnesses";

(b)      "interview or investigate defense witnesses to develop a theory of defense";

_____

[3]The Information To Establish Prior Conviction had been filed on April 18, 2007.  (Crim. Doc. 7).

      (c)     "allow the defendant to testify in his own defense";

      (d)     "file a motion to dismiss [the] indictment" based on alleged police misconduct;

      (e)     "use impeachment evidence to impeach government witnesses"; and

      (f)     "[file a motion for] downward departure [for] cooperation."

(§ 2255 Brief at 1).  Turner also raised claims captioned, "Illegal stop, search, and seizure" and "Coersion (sic) and duress."  (*Id.*)

The court entered an order requiring the Government to show cause why Turner is not entitled to the relief sought.  (Civ. Doc. 3).  Before the Government responded, Turner filed an additional "Memorandum of Law," dated April 3, 2009, in which he sought to raise a claim that he is "actually innocent of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2)" based on *Bailey v. United States*, 516 U.S. 137 (1995). (Civ. Doc. 7).  A few days later, the Government responded to the show cause order, arguing that Turner's claims are barred by a provision in his plea agreement whereby he waived his right to seek § 2255 relief and that his claims are also due to be denied on the merits.  (Civ. Doc. 9).  The Government supported its response with an evidentiary submission that included portions of the record and an affidavit from attorney Steen.  (Civ. Doc. 9-7 ("Steen Aff.")).

On May 18, 2009, after the court advised that the § 2255 case appeared to be

11

ripe for summary disposition (Civ. Doc. 10), Turner filed a reply to the Government's response. (Civ. Doc. 11 ("Dft. Reply Brief").  In that reply, Turner attempted to flesh out details underlying several of his previously pled claims.  He also claimed for the first time that he was misled and induced into pleading guilty based on Steen's alleged advice that, if Turner would accept a deal immediately and cooperate with prosecutors, he would receive only a five to ten year sentence.  (Dft. Reply Brief at 2, 9).  On June 15, 2009, Turner filed a motion raising similar points and appears to seek leave to amend his § 2255 motion and have the allegations relate back to the date of filing for the original pursuant to Rule 15(c) of the *Federal Rules of Civil Procedure*. (Civ. Doc. 12).

Almost a year later, Turner filed another motion, dated April 9, 2010, in which he expressly sought "to amend and supplement" his § 2255 motion.  (Civ. Doc. 13). In that motion, Turner reiterated issues from his original motion and included the following "supplemental" claims:

(1)     his attorney was ineffective because he failed to appeal after Turner "[paid] him money down on his appeal" (*id.* at 4);

(2)     this court was without jurisdiction because the indictment allegedly was not signed by the foreman of the grand jury (*id.* at 9, 10);

(3)     his attorney was ineffective because he failed to move to dismiss the indictment on the ground that it allegedly was not properly

signed by the foreman of the grand jury (*id.* at 5, 9);

(4)    the Government failed to disclose evidence in violation of his Fifth Amendment rights under *Brady v. United States*, 373 U.S. 83 (1963) (*id.* at 11, 38);

(5)    he is a victim of "grand jury fraud" based on that fact that a grand jury acts merely as a "rubber stamp" for the prosecutor and thus lacks "independence" (*id.* at 23-29).

Further, although the pagination of that motion to "amend and supplement" indicates that it is intended to constitute a single document, it also includes what would otherwise appear to be a number of separate documents with their own respective captions and signatures. Such would include a "Motion to Dismiss Indictment for F. R. Cr. P. 6 Violations, or in the alternative, Motion to Inspect List of Names of Qualified Grand Jurors Who Voted the Indictment" (Civ. Doc. 13 at 21), and a "Memorandum of Law" in support thereof. (*Id.* at 12-20). Turner therein questions at length whether there might have been violations of Rule 6 of the *Federal Rules of Criminal Procedure* in the proceeding that resulted in his indictment, including whether there might have been less than the required twelve qualified grand jurors present to vote. The filing also includes a captioned motion "to dismiss the indictment ... for selective prosecution," or, in the alternative, to "convene a federal grand jury, pursuant to Federal Rule of Criminal Procedure 6(a), "in order to *properly investigate* the crimes alleged in the indictment," and for an order directing the

13

production of transcripts of the grand jury that issued the indictment ....." (*Id.* at 22 (emphasis original)).

On June 28, 2010, Turner filed a third motion to "amend and supplement" his § 2255 application and to dismiss his indictment for alleged violations of Rule 6, Fed. R. Crim. P. (Civ. Doc. 14). In that filing, Turner essentially repeated arguments raised in his reply brief and in prior motions. On August 8, 2011, Turner filed a fourth motion "to amend and supplement." (Civ. Doc. 15). In that motion, he raised a claim based on *Shepard v. United States*, 544 U.S. 13 (2005), and *United States v. Alston*, 611 F.3d 219 (4th Cir. 2010), in which he asserted that he is due to be resentenced on the theory that the court's use of one of his prior felony drug convictions to enhance his federal sentence was improper because it was the result of a guilty plea in which he had also maintained his innocence.

Finally, on May 21, 2012, Turner raised his fifth and final motion to "amend and supplement." (Civ. Doc. 16). In that 74-page filing, Turner claims that Titles 18 and 21 of the United States Code, which contain the relevant federal criminal statutory provisions pursuant to which he was convicted and sentenced, violate the Fifth and Tenth Amendments. (*Id.* at 2). He also claims that Public Law 80-772, the statute that was codified as 18 U.S.C. § 3231 and that gives the district courts jurisdiction to hear federal criminal cases, was "never passed by Congress." (*Id.* at

14

3).

## II.    DISCUSSION

### A.    The Plea Agreement Waiver

The Government first argues that all of Turner's claims are barred by his plea agreement, which contains an express waiver of his right to collaterally attack, under § 2255 or otherwise, his conviction or sentence.  (Plea Agreement at 17).  The waiver contains limited excepts, allowing him to contest his sentence, but only on the grounds that it is above the statutory maximum or is an upward departure from the Guideline sentence as determined by the court.  The Government argues that Turner's claims do not fit within those exceptions and that the waiver is thus applicable to preclude all of his claims.

Where a defendant has expressly waived the right to an appeal or to mount a collateral attack as part of a plea agreement, such a waiver is generally enforceable, consistent with its terms, where entered into knowingly and voluntarily.  *See Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006).  The Government is correct that none of Turner's claims fit within the exceptions to the waiver in his plea agreement.  Nonetheless, a plea agreement waiver cannot preclude a defendant's claims contesting the validity of the guilty plea and agreement itself, whether stemming from

15

counsel's alleged ineffective assistance or otherwise. *Patel v. United States*, 252 Fed. App'x 970, 974-975 (11th Cir. 2007). Many of Turner's § 2255 claims fit into that mold, as he argues that his attorney's deficient performance in terms of failing to have his case dismissed or prepare a defense at trial left him with no alternative but to plead guilty. Accordingly, the court will proceed to consider the merits of those ineffective-assistance claims that are at least arguably related to the validity of the guilty plea.

### A.     Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." "It has long been recognized that the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970); *see also Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). A claim of ineffective assistance of counsel can be established upon a showing that the (1) "counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense" because the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In a habeas corpus action, the petitioner generally carries the burden to establish both components. *Lawhorn v. Allen*, 519 F.3d 1272, 1293 (11th Cir. 2008) (citing *Atkins v. Singletary*, 965 F.2d 952, 958-59 (11th Cir. 1992)).

16

The Eleventh Circuit has explained:

> To establish a constitutionally deficient performance, the defendant must "identify the acts or omissions ... that are alleged not to have been the result of reasonable professional judgment" to "show that counsel's representation fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 687, 690. The "highly deferential" reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and recognize that cases warranting the grant of habeas relief based on an ineffective assistance claim "are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quotation and citation omitted). ... "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689. ... Because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002), we must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

*Lawhorn*, 519 F.3d at 1293-94.

Once constitutionally deficient performance is established, the petitioner generally must also prove prejudice. To do so, the petitioner must convince the court "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466

U.S. at 694.  While a petitioner need not show that counsel's deficient conduct "more likely than not altered the outcome of the case," it is not enough for the petitioner to show that counsel's errors merely had "some conceivable effect on the outcome of the proceeding."  *Id.*, 466 U.S. at 693.  A court may dispose of a claim of ineffective assistance of counsel based upon a determination that either the performance prong or the prejudice prong has not been met, without addressing the other.  *See Strickland*, 466 U.S. at 697; *Rose v. McNeil*, 634 F.3d 1224, 1242 (11th Cir. 2011); *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010).

Where a defendant claims that his guilty plea was a product of his attorney's deficient performance, to show prejudice the defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Premo v. Moore*, 131 S. Ct. 733, 743 (2011).  "When a defendant alleges that his counsel failed 'to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant ... will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.'"  *Price v. United States*, 456 Fed. App'x 795, 797 (11th Cir. 2012) (quoting *Hill*, 474 U.S. at 59).  "This depends 'in large part on a prediction whether the evidence likely would have changed the outcome of the trial.'"

18

*Id.* (quoting *Hill*, 474 U.S. at 59).  Thus, the prejudice inquiry in such circumstances "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Hill*, 474 U.S. at 59; *see also, e.g., Price*, 456 Fed. App'x at 798; *Gaedtke v. Secretary, Dep't of Corr.*, 369 Fed. App'x 12, 18-19 (11th Cir. 2010); *Cruz v. United States*, 188 Fed. App'x 908, 914 (11th Cir. 2006).  That principle is especially apt here because Turner pled guilty only after the Government presented its entire case-in-chief at trial.

As noted previously, notwithstanding the plea agreement waiver, this court is required to consider Turner's claims alleging that certain acts or omissions of counsel amounted to constitutionally deficient performance that effectively left him with no choice but to plead guilty.  Those types of claims are grouped and addressed together in the following five categories:  (1) alleged failures in preparing a defense for trial, (2) the alleged failure to allow Turner to testify at trial on his own behalf, (3) failure to have evidence suppressed, (4) failure to move to dismiss the indictment, and (5) alleged advice that if Turner pled guilty immediately and cooperated with prosecutors he would likely receive only a five-to-ten year sentence.  Turner also raises several additional ineffective-assistance claims that do not implicate the validity of his guilty plea or the plea agreement.

19

### 1.    Failure to Prepare a Defense

The primary thrust of Turner's § 2255 motion comes from several claims in support of a broader argument that his appointed counsel, Steen, generally failed to prepare a defense, thereby rendering ineffective assistance that left Turner with no choice but to plead guilty.  In short, Turner claims that he was actually innocent of all charges and that his attorney was ineffective in failing to construct a defense and undercut the Government's case to demonstrate that.  More specifically, Turner claims that his counsel was ineffective because he allegedly (a) failed to "investigate and interview" witnesses, for both the government and the defense; (b) failed to subpoena certain of those witnesses to testify for the defense at trial; and (c) failed "to use impeachment evidence to impeach government witnesses."[4]  (§ 2255 Brief at 1, ¶¶ 1, 2, 5; *see also id.* at pp. 4-6, 11-12).  In connection with his claims regarding witnesses that his attorney allegedly failed to "investigate," Turner identifies the following individuals:  Turner's brother, John Turner ("John"); Gwendolyn Dial; Cheryl McClellan; Linn Carpenter; Quinton Jackson, Seth Lewis; Willie Charles Bryant; and Darryl Dubose.  (*See* § 2255 Brief at 6; Civ. Doc. 11 at 1-2, 5, 7; Civ. Doc. 12 at 4).  Turner says that counsel should have subpoenaed all of them to testify

---

[4]As stated above, Turner also makes a related claim that his counsel "did not allow" him to testify on his own behalf at trial.  That issue is addressed in a separate section in the text below.

at trial, with the exception of Bryant and Dubose, who Turner appears to suggest were witnesses for the prosecution.  (*See* Civ. Doc. 11 at 7; Civ. Doc. 12 at 4, 10).

More specifically, Turner alleges that his brother John, Dial, and McClellan were all present at the residence at 3515 34th Avenue North in Birmingham (hereinafter the "residence") when police officers with the Birmingham Narcotics Unit executed a search warrant for the premises on December 29, 2006.  Turner contends that a Detective Quigley falsely testified at trial that Turner was the owner of both the residence and the contraband seized in the search of thereof.  (§ 2255 Brief at 6, 11).  Turner says that Quigley further testified that Turner was present in the residence when agents broke down its door at the commencement of the search, which Turner says was also not true.  (*Id.*)   Turner emphasizes, rather, that he was arrested by Birmingham police several blocks away and that they took him to the residence thereafter when the search warrant was being executed, thereby "putting him with the bust."  (*Id.* at 6)  Turner suggests that his brother John would have testified that the residence was John's, and that John, Dial, and McClellan all would have testified that Turner was not present at the residence when the search began.[5]

---

[5]The details of Detective Quigley's disputed testimony on this matter are not entirely clear, either as to how he actually testified or as to how Turner says Quigley testified, to the extent that there may be a difference.  Because Turner pled guilty, there is no transcript of the trial proceedings in the record.  However, both the written plea agreement and the Government's recitation of the facts of the case at the plea hearing included statements that Turner was present at the residence prior to the execution of the warrant but that he left in his vehicle and was

(*Id.*)

Turner also complains that Government witnesses gave false testimony that he was the "owner" of the automobile repair shop located at 2516 Vanderbilt Road in Birmingham (hereinafter the "repair shop"), and that he had sold crack cocaine out of those premises.  Turner claims that his brother and Carpenter, who Turner seems to hint was an employee at the repair shop, would have testified that Turner was not the owner of that business.  Turner also seems to suggest that Carpenter and/or another one of "Defendant's witnesses at the shop[6] could have testified" that Turner did not sell drugs to a Government informant at the repair shop and that the money Turner was shown to have received from the informant was for car repairs, not drugs. (§ 2255 Brief at 6 (footnote added)).  Also, Turner contends that his counsel should have called Lewis, Turner's parole officer, to testify.  Turner states that Lewis "would have had to testify that [Turner] did not have any outstanding warrants" when police stopped his vehicle on December 29, 2006, and arrested him.  (Civ. Doc. 12 at 4).  Presumably such testimony would have been offered in support of Turner's claim that

---

arrested soon thereafter away from the residence, in the traffic stop.  (*See* Plea Agreement at 25-34; Plea Hearing at 4-12).

[6]The names of such other witnesses at the repair shop are unclear.  Likewise, while Turner states that he provided the name "Quinton Jackson" to his counsel as a witness with "favorable testimony" (Civ. Doc. 11 at 7), Turner does not explain who Jackson is or any specifics of any testimony he would give.

such stop and arrest violated the Fourth Amendment.  Turner also states that Lewis would have testified that Turner "was considered a model inmate/client on [p]arole from 2000 [to] 2007."  (*Id.*)

With regard to counsel's alleged failure to "interview" and "impeach" government witnesses, Turner focuses on Bryant and Dubose.  Turner relates that Bryant testified for the Government at trial that he had met Turner at "a corner store," when Turner had invited him to call anytime he needed drugs.  Turner says he did not even know Bryant.  Turner further contends that he "told his trial counsel that the word was out in the North [Birmingham/Collegeville] area that Darryl Dubose and his cousin ... had set [Turner] up."  (Civ. Doc. 12 at 4).  Turner says that he "kept asking his counsel ... to ask was (sic) they related when the government witness was on the stand," but counsel "never did."  (*Id.*)

Steen responds to these claims in his affidavit, stating that he hired a retired deputy sheriff to investigate the case, including for the purpose of interviewing witnesses.  (*See* Steen Aff. at 1-4).  On that front, Steen states that he and the investigator had difficulty obtaining information from the Government's informants, in part because one of them was represented by counsel in connection with a state charge, which was a motivation for his cooperation against Turner.  (*Id.* at 2).  Steen does acknowledge that Turner supplied the names of several potential defense

witnesses and possible contact numbers.  Steen explains, however, that all of those individuals, save one, turned out to be convicted felons, and they either would not agree to be interviewed, could not be found, or their records were "so questionable" and/or they failed to provide any useful information, that Steen did not call them as witnesses.  (*Id.* at 3-4).  Steen states he that the only person that agreed to be interviewed and offered useful information was a woman named Cortie Rowell. Steen states that Rowell had told the defense that one of the guns that Turner was charged with possessing was hers, not Turner's, and that she was present and ready to testify to that at trial, but she ultimately did not take the stand because Turner decided to plead guilty.  (*Id.* at 3).

It is true that "[t]o perform within constitutional bounds, defense counsel must conduct a reasonable investigation in relation to their representation." *Borden v. Allen*, 646 F.3d 785, 818 (11th Cir. 2011).  However to the extent that Turner is arguing that his counsel failed to arrange for witnesses to testify for the defense at trial, the  "mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." *Chandler v. United States*, 218 F.3d 1305, 1316 n. 20 (11th Cir. 2000) (en banc) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995)).  Indeed, such complaints "are not favored, because the presentation of

testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)[7]; *see also Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006); *Hall v. Thomas*, 611 F.3d 1259, 1293 (11th Cir. 2010) ("[T]he decision concerning 'which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.'" (quoting *Rhode v. Hall*, 582 F.3d 1273, 1284 (11th Cir. 2009) (internal quotation marks and brackets omitted)). "Counsel cannot be said to be ineffective for failing to call an unavailable witness." *Williamson v. Moore*, 221 F.3d 1177, 1181 (11th Cir. 2000). A habeas petitioner fails to show prejudice in this context where he fails to proffer evidence to establish that the witness would have testified favorably had his attorney questioned him. *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988). A defendant's own self-serving speculation that missing witnesses would have been helpful is insufficient to carry a petitioner's burden to justify habeas relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001); *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985); *Streeter v. United States*, 335 Fed. App'x 859, 864 (11th Cir. 2009).

---

[7]The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Turner is unable to present any material evidence to counter Steen's testimony indicating that he conducted a reasonable investigation into the evidence and potential witnesses.  Turner offers nothing but his own bald assertions that proposed defense witnesses were both available and willing to testify favorably.  Such is insufficient to establish that counsel's performance was deficient or that he suffered prejudice with regard to uncalled defense witnesses.  Turner also cannot show deficient performance or prejudice insofar as he claims that counsel was ineffective for failing to "investigate"prosecution witnesses.  Turner fails to show what evidence or information supposedly would have been revealed by such investigation or how it might have made a difference in his case.  At times, Turner complains that prosecution witnesses testified falsely, and he simply argues that his counsel should have "impeached" them.  However, he offers little to no specifics on how he conceives counsel might have accomplished that task or how he was prejudiced within the meaning of *Strickland*.  Turner is not entitled to relief on these claims.

### 2.   Failure to Allow Turner to Testify

Turner next claims that his counsel was ineffective and induced him to plead guilty because he allegedly "fail[ed] to allow [Turner] to testify in his own defense

..."[8]  (§ 2255 Brief at p. 1 ¶ 3).  The Eleventh Circuit has recently declared the law in

this area as follows:

> This Court, relying on the Supreme Court's decision in *Rock v. Arkansas*, 483 U.S. 44 (1987), has recognized that "a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial" under several provisions of the Constitution, including the Sixth and Fourteenth Amendments.  *United States v. Teague*, 953 F.2d 1525, 1530–32 (11th Cir. 1992) (en banc) (emphasis omitted).  "This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." *Id.* at 1532.  "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide.  This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an 'intentional relinquishment or abandonment of a known right of privilege.' " *Id.* at 1533 (footnote omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  Where defense counsel has not informed the defendant of his right to testify, defense counsel "has not acted within the range of competence demanded of attorney[s] in criminal cases." *Gallego v. [United States]*, 174 F.3d 1196, 1197 (11th Cir. 1999) (citation and internal quotation marks omitted); *see Teague*, 953 F.2d at 1534.

*Morris v. Secretary, Dep't of Corr.*, 677 F.3d 1117, 1129 (11th Cir. 2012).

Turner contends that his counsel would not "allow him to testify."  The

Government responds by pointing to attorney Steen's affidavit, which states in

---

[8]Turner asserts that counsel's failure to allow Turner to testify "created a conflict of interest."  (§ 2255 Brief at 3; *see also id.* at 6-7).  Where petitioner can show that his attorney was laboring under an actual conflict of interest, prejudice to the petitioner is presumed, thereby excusing him from having to demonstrate it in order to establish an ineffective-assistance claim. *See Strickland*, 466 U.S. at 692.  However, Turner fails to explain how any failure by his attorney to have Turner testify had anything to do with a conflict of interest.

relevant part, "In [Turner's] case, I did advise him that I did not believe that it would be prudent for him to testify, but that the choice to testify was strictly up to him." (Steen Aff. at 4).  In his brief in reply, Turner admits that is just what happened, as he there states:  "So the Movant told his attorney that he wanted to testify in his behalf *and his counsel's* (sic) *said that he didn't recommend it but it was the Defendant* (sic) *choice*."  (Civ. Doc. 11 at p. 2 (emphasis added); *see also* Doc. 12 at 8 ("The defense counsel gave the Defendant advice not to testify in his own behalf ...."); Doc. 2 at 6 ("Counsel told the defendant that his testimony might be discredited by government witnesses.")).  Accordingly, to the extent that Turner contends that counsel failed to advise him that he could choose to testify and thereby caused him to plead guilty, that claim is due to be rejected based on Turner's own acknowledgment that his attorney did so advise him.

Insofar as Turner may be complaining that counsel was ineffective for *recommending* that Turner forego testifying, such advice also was not deficient performance under *Strickland*.  Pursuant to a stipulation, the jury was made aware of the fact that Turner had previously been convicted of a felony prior to his alleged possession of a firearm, an element of the § 922(g)(1) offense charged in Counts 8, 9, and 10.  (Crim. Doc. 44).  However, the specific number, name, and nature of those prior convictions would generally remain inadmissible so long as Turner did not take

the stand.  *See Old Chief v. United States*, 519 U.S. 172, 190-91 (1997); *United States v. Lopez*, 649 F.3d 1222, 1242 (11th Cir. 2011); (*see also* Crim. Doc. 40; unnumbered margin entry in Crim. case dated 7/11/07).   If Turner were to testify, though, the government likely would have been allowed to present such specifics to the jury, which would have revealed that Turner had four prior felony convictions, for violation of Alabama's Uniform Controlled Substances Act, trafficking in cocaine, receiving stolen property, and possession of cocaine.  *See* Fed. R. Evid. 608(b), 609(a)(1); *Pair v. Cummins*, 373 Fed. App'x 979, 983 (11th Cir. 2010) ("[O]nce [the defendant] took the stand to tell his side of the story, there was no way to prevent the jury from hearing about his prior felony conviction.").  Given that Turner was on trial in this court for crack cocaine distribution, it was reasonable to advise Turner against testifying in order to keep the specifics of his prior convictions from the jury.  *See Geer v. United States*, 435 Fed. App'x 838, 839 (11th Cir. 2011); *see also Teague*, 953 F.2d at 1533 n. 9 ("There are good tactical reasons why it might not be best for the defendant to testify in some circumstances.  [For example] ... the defendant might be prejudiced by revelation of prior convictions ....").  This claim is due to be denied.

### 3.    Failure to Move to Dismiss the Indictment

#### a.    Alleged Police Misconduct

In connection with his original § 2255 motion, Turner contends that his

attorney was ineffective because he failed to file a pretrial motion to dismiss the indictment based on alleged police misconduct, which Turner characterizes as "outrageous." (§ 2255 Brief at 8). Upon examination, this claim boils down to a charge that his attorney should have sought a dismissal as a sanction for alleged violations of his constitutional rights. (*Id.* at 8-11). First, Turner complains that police unlawfully stopped his vehicle and arrested him in violation of the Fourth Amendment. Specifically, Turner asserts that the police offered that they stopped him based on two outstanding arrest warrants, which Turner maintains did not exist. Second, Turner complains that police also violated the Fourth Amendment by searching and seizing evidence from the residence at 3514 34th Avenue North. Turner argues that the state search warrant for that search was founded on an affidavit that allegedly contained false statements to the effect that Turner was the "owner" of that property. Third, Turner alleges that, after his arrest following the vehicle stop, police brought him to the residence while the search pursuant to the warrant was occurring, at which time police allegedly planted crack cocaine in Turner's pocket and videotaped it being "found" in search of his person. Although Turner does not appear to make the assertion expressly, it is assumed here that he is claiming that his counsel's failure to move for a dismissal of the indictment was one of the omissions that caused him to plead guilty.

30

"A district court may dismiss an indictment pursuant to the federal courts' supervisory power." *United States v. Shelley*, 405 F.3d 1195, 1202 (11th Cir. 2005) (quoting *United States v. White*, 846 F.2d 678, 693 (11th Cir. 1988)).  However, dismissal based on governmental misconduct is an extreme sanction that is to be infrequently utilized. *See id.*; *United States v. Michael*, 17 F.3d 1383, 1386 (11th Cir. 1994).  Indeed, it is clear that the remedy for violations of a defendant's constitutional rights by government officials is generally to suppress the evidence obtained as a result, not dismissal of the indictment. *See United States v. Morrison*, 449 U.S. 361, 365-66 (1981) (stating that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate" and that the remedy in such situations "is limited to denying the prosecution the fruits of its transgression"); *see also United States v. Blue*, 384 U.S. 251, 255 (1966); *United States v. Jayyousi*, 657 F.3d 1085, 1112 (11th Cir. 2011) (declining to apply the "outrageous government conduct defense" and questioning whether it actually exists at all); *United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990).  Likewise, even if the grand jury received evidence that the defendant contends was illegally obtained, the appropriate remedy is not dismissal of the ensuing indictment but is, rather, a motion to suppress the evidence from use at trial. *In re Grand Jury Proceedings*, 142 F.3d 1416, 1428 (11th Cir.

1998); *see also United States v. Calandra*, 414 U.S. 338, 345 (1974). Of course, once a court has granted a pretrial motion to suppress, dismissal of the indictment may follow as a consequence, but only if the evidence suppressed would be necessary to support a conviction. *See United States v. MacDonald*, 435 U.S. 850, 860 n. 7 (1978) ("Dismissal of the indictment is the proper sanction ..., usually, when the only evidence against him was seized in violation of the Fourth Amendment.").

While Turner's counsel did not move to dismiss the indictment for alleged Governmental misconduct, that failure was not deficient performance nor did it result in prejudice under *Strickland*. First, Turner's allegations, even if credited, fail to show that his Fourth Amendment rights were violated by the search of the residence. Turner claims that the warrant authorizing the search was invalid because the affidavit used to obtain the warrant falsely stated that he was the "owner" of the residence. However, an examination of the affidavit reveals that it contains no such allegation. Rather, the affidavits relates that a confidential informant told police that Turner had sold crack cocaine out of the residence and that an independent investigation confirmed that the power bill was in Turner's name, the latter being a fact that Turner has never disputed. (Crim. Doc. 19-1 at 3, 5; *see also* Crim. Doc. 37). Indeed, the warrant affidavit acknowledges that Turner's "primary residence" appeared to be elsewhere, in Adamsville, Alabama. (Crim. Doc. 19-1 at 3). Because

the affidavit does even not even allege that Turner is the "owner" of the residence, his

claim that his counsel was ineffective for failing to raise that argument, whether in

support of a motion to dismiss the indictment or to suppress the evidence recovered

from the residence[9], is wholly without merit.[10]

Turner also cannot show that his counsel was ineffective for failing to move

to dismiss the indictment based on the supposedly illegality of the traffic stop and

Turner's ensuing arrest.  Turner claims that the police justified the stop based on two

outstanding warrants, which he says did not exist.  As a threshold matter, assuming

_____

[9]It should be noted that Turner's counsel did, in fact, file a pretrial motion to suppress the evidence recovered from the residence, on the ground that the underlying affidavit allegedly failed to provide sufficiently fresh information as to drug transactions at that location to support a probable cause determination.  (See Crim. Doc. 15).  In this vein, Turner does not actually claim in his motion that counsel was ineffective for failing to make other specific arguments in support of a motion to suppress.  Nonetheless, Turner does claim that his counsel was ineffective for failing to "impeach" evidence recovered from the residence and following the stop of Turner's vehicle, on the basis that the Fourth Amendment was violated.  (See § 2255 Brief at 11).  He also argues that counsel should have moved to dismiss the indictment based upon such alleged Fourth Amendment violations.  (See id. at 8-9).  It is assumed here that such *pro se* allegations, liberally construed, sufficiently raise claims that counsel was ineffective for failing to raise an available Fourth Amendment issue in a motion to suppress.

[10]Even assuming the affidavit did state that Turner was the "owner" of the residence, that would still not invalidate the warrant or the ensuing search of the residence.  First, Turner would have to make allegations sufficient to support that the information was not only false but also that the affiant made the assertion knowing that it was false or with reckless disregard of its falsity.  *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  Turner has not done so.  Second, even further assuming that he had made such allegations, the warrant would still be valid because the remaining information in the affidavit, tending to show that Turner regularly sold crack cocaine from out of the residence and had done so within the preceding 48 hours, would still give rise to probable cause to search the residence.  *See id.*  These same principles also defeat any claim that Turner might be making as to the validity of the warrant to search the Turner Automotive premises at 2516 Vanderbilt Road.

33

for the sake of argument that his Fourth Amendment rights were violated at that time, the remedy would have been to suppress evidence obtained as a result, not to dismiss the indictment. *See Morrison*, 449 U.S. at 365-66; *In re Grand Jury Proceedings,* 142 F.3d at 1428. It is no defense to a state or federal criminal prosecution that the defendant was illegally arrested or forcibly brought within the jurisdiction of the court. *See United States v. Noriega*, 117 F.3d 1206, 1214 (11th Cir. 1997); *Ker v. Illinois*, 119 U.S. 436 (1886); *Frisbie v. Collins*, 342 U.S. 519, 522 (1952). Even if Turner's *pro se* filings might liberally construed as including a claim that his counsel was ineffective for failing to move to suppress evidence based on this Fourth Amendment theory,[11] Turner has not identified what particular evidence was supposedly obtained as a consequence of the stop or the arrest, never mind show that such evidence was so prejudicial to his case, in light of all of the evidence against him, that it might have forced him to plead guilty. That deficiency alone dooms this

---

[11]To the extent that Turner raises claims seeking relief based directly on alleged violations of his Fourth Amendment rights, whether in connection with the vehicle stop, his arrest, or in the warrant searches, those claims are all foreclosed. First, unless Turner is able to set aside his guilty plea, his Fourth Amendment claims are waived under the terms of the plea agreement and, indeed, by the unconditional guilty plea itself. *See United States v. Wai-Keung*, 115 F.3d 874, 877 (11th Cir. 1997) (per curiam). Also, regardless of waiver, Turner had a fair opportunity to litigate his Fourth Amendment claims at the trial level and on direct appeal if he chose, so the claims are not subject to being raised on collateral review under the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976). *See United States v. Kilgore*, 2011 WL 6025908, *2 (N.D. Fla. 2011); *Schultz v. United States*, 2011 WL 2784590, *11 n. 4 (M.D. Fla. 2011). However, the court can and does consider Turner's claims alleging that his trial counsel was *ineffective* for failing to raise certain Fourth Amendment claims, *see Kimmelman v. Morrison*, 477 U.S. 365 (1986), at least to the extent that Turner maintains such failure caused him to plead guilty.

claim, assuming that it has been pled, assuming that there were no outstanding warrants[12], and assuming that the lack of such warrants would render the stop and arrest illegal.[13]

Finally, Turner claims that his counsel should have moved for dismissal of the indictment based on the fact that the police supposedly fabricated evidence by planting crack cocaine in his pocket and then videotaped the search in which the crack was found.  However, even assuming that establishing the existence of such

---

[12]Moreover, although Turner asserts that there were no outstanding warrants for his arrest, Steen contends that he did not pursue that argument because he conducted a search of records of the City of Birmingham, which indicated that there had been, in fact, warrants out for Turner's arrest.  (Steen Aff. at 7; *see also generally* Crim. Doc. 19-1 at 3 (warrant affidavit stating that "Turner has two outstanding warrants with the City of Birmingham for storing disabled vehicles")).  If Steen did perform such an investigation and relied upon such records, his performance would not be deficient under *Strickland,* even if the records might have been incorrect.  *See Hi Quoc Truong v. Runnels*, 2011 WL 6778784, *5-6 (N.D. Cal. 2011) ("[I]n light of the investigative efforts [the attorney] undertook, the state court was not unreasonable in finding [the attorney] reasonably relied on official police records" in arriving at a defense theory, even if those records were mistaken); *cf. Pease*, 240 F.3d at 942 (affirming denial of § 2255 relief on ineffective assistance claim where attorney relied upon defendant's erroneous representations regarding his own criminal history instead of independently running a criminal records check).  However, Turner has alleged that Steen stated to him during the trial that he had "checked court for the two outstanding warrants against the defendant and there were no warrants."  (Civ. Doc. 12).

[13]The Government also claims that Turner's arrest was valid even without an arrest warrant because the police had probable cause to believe that Turner had recently committed a felony offense, namely selling crack cocaine to confidential informants, as depicted in hidden camera video and described in the affidavits for the search warrants.  (*See* Civ. Doc. 9 at 28-29).  The Government might ultimately be correct.  However, in order to lawfully arrest in a public place without a warrant, the arresting officers must be in possession of information sufficient to establish probable cause to believe that the defendant has committed a felony.  *See Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004).  It is unclear from the current record exactly what facts and circumstances might have been known to the particular officer(s) that stopped Turner's vehicle and arrested him.

35

flagrant abuse by police could have been the subject of some form of relief at or prior to trial, Steen expressly claims in his affidavit that Turner never told him of any such incident and Steen further denies generally knowledge of any law enforcement misconduct in Turner's case. (Steen Aff. at 7). Turner fails specifically to dispute those allegations by Steen. Accordingly, Steen's failure to pursue relief based on allegations of planted evidence or similar police misconduct did not amount to deficient performance because the record does not support that Turner made any such claim known to Steen or that Steen otherwise had reason to suspect it existed at the time of the criminal proceedings. *See Mora Lancheros v. United States Attny. Gen.*, 236 Fed. App'x 555, 561 (11th Cir. 2007) (petitioner failed to show deficient performance based on counsel's failure to elicit testimony that she was stabbed in an encounter with government-sponsored vigilante organization where petitioner did not claim she informed counsel about stabbing incident and counsel stated in a letter that petitioner did not tell him about it); *see also Strickland*, 466 U.S. at 691 (reasonableness of counsel's performance may depend on information supplied by defendant); *Marshall v. United States*, 2012 WL 629243, *5 (M.D. Ga. 2012) (defendant failed to show that counsel was ineffective for failing to raise issue of government's alleged misconduct regarding non-disclosure of DNA test results where defendant failed to show that counsel was aware of such alleged misconduct). Turner

36

is not entitled to § 2255 relief based on the failure of his counsel to move for dismissal or for suppression of evidence based on alleged police misconduct.

### b.    Deficiencies in Indictment and Grand Jury Procedure

More than a year after filing this action, Turner filed a motion, dated April 9, 2010, in which he sought to "amend and supplement" his § 2255 motion. (Civ. Doc. 13). In that motion, Turner included claims alleging that his attorney was ineffective on various grounds, including that he should have moved to dismiss the indictment because it is allegedly not signed by the grand jury foreman and that there may have been other defects in the grand jury procedure, in violation of the Fifth Amendment and/or Rule 6 of the *Federal Rules of Criminal Procedure*. Although it is not entirely clear, it seems that Turner may be questioning whether the requisite 12 grand jurors voted to indict him, whether the names of the grand jurors were properly recorded, whether the grand jurors were legally qualified, and whether the grand jury was "independent" of the control of the prosecutor. (*See* Civ. Doc. 13 at 12-20). These claims are due to be denied because they are untimely filed and without merit, as explained below.

Turner's § 2255 motion is subject to a one-year statute of limitations, which commenced running upon the date that his conviction became final. *See* 28 U.S.C.

§ 2255(f)(1); *Figuero-Sanchez v. United States*, 678 F.3d 1203, 1207 (11th Cir. 2012); *Stewart v. United States*, 646 F.3d 856, 857 (11th Cir. 2011).  When a federal defendant pursues a timely direct appeal but does not seek certiorari review in the Supreme Court, his conviction is final upon the expiration of the period in which he might have sought such review.  *Clay v. United States*, 537 U.S. 522, 525 (2003); *Close v. United States*, 336 F.3d 1283, 1284-85 (11th Cir. 2003).  There is no question that Turner timely appealed to the Eleventh Circuit, that such appeal was dismissed for want of prosecution on January 25, 2008, and that Turner did not petition for review in the Supreme Court.  Although Turner's appeal was dismissed on a procedural ground, he is still entitled to the benefit of the additional time in which he could have filed a timely certiorari petition.  *See United States v. Franks*, 397 Fed. App'x 95, 98-99 (5th Cir. 2010); *Latham v. United States*, 527 F.3d 651, 652-53 (7th Cir. 2008).  However, after the dismissal of his appeal, Turner filed a motion on October 3, 2008, to reinstate it, which the Eleventh Circuit summarily denied without comment or explanation in a one-line, per curiam order entered November 14, 2008.  Thus, the question becomes whether the period in which to file a timely certiorari petition in the Supreme Court began running upon the Eleventh Circuit's dismissal of Turner's appeal or upon that court's later denial of the motion to reinstate the appeal.

Under Supreme Court Rules 13(1) and (3), for a petition for certiorari to be timely, it must be filed within 90 days after entry of the judgment or order sought to be reviewed. *See also* 28 U.S.C. § 2101(c). The latter rule further provides, however, that "if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or *sua sponte* considers rehearing, the time to file the petition for a writ of certiorari ... runs from the date of the denial of rehearing or, if the rehearing is granted, the subsequent entry of judgment." S. Ct. Rule 13(3). Although Turner did not file a "petition for rehearing," his motion to reinstate his appeal was the functional equivalent because it likewise sought to modify the judgment and alter the parties' rights. *See Latham*, 527 F.3d at 652; *cf. Chastang v. Heckler*, 729 F.2d 701, 702 (11th Cir. 1983) (where Eleventh Circuit dismissed appeal for want of jurisdiction, court characterized appellant's motion to reinstate the appeal as "belated," citing the former 11th Circuit Rule providing that a petition for rehearing must be filed within 20 days of the date of an opinion); *Hibbs v. Winn*, 542 U.S. 88, 97-98 (2004) (recognizing that a "timely rehearing petition, a court's appropriate decision to entertain an untimely rehearing petition, and a court's direction, on its own initiative, that the parties address whether rehearing should be ordered" suspend the running of the 90-day certiorari period because "[a]ll three raise the question whether the court will modify the judgment and

alter the parties' rights."). Accordingly, in order to be "timely" for purposes of Supreme Court Rule 13(3), Turner's motion to reinstate had to be filed within the period prescribed for a timely petition for rehearing. *See Latham*, 527 F.3d at 652. That deadline expired on February 8, 2008, *i.e.*, 14 days after the Eleventh Circuit dismissed the appeal. *See* Rule 40(a)(1), Fed. R. App. P. Because Turner did not file his motion to reinstate the appeal until October 3, 2008, that motion was not timely for purposes of tolling the running of the 90-day period. It is true that Supreme Court Rule 13(3) does also allow for such tolling where an appellate court "appropriately entertains an untimely petition for rehearing." It is assumed that the word "entertains" in this context includes cases in which a court of appeals merely considers the merits of an untimely application for rehearing, even if rehearing is ultimately denied. *See Young v. Harper*, 520 U.S. 143, 147 n. 1 (1997) (holding that certiorari petition was timely where filed within 90 days of the denial of rehearing by the court of appeals where lower court had previously granted motion for leave to file a late petition for rehearing); *cf. Hibbs v. Winn*, 542 U.S. 88, 97-98 (2004) (where the court of appeals *sua sponte* ordered the parties to brief whether a case should be reheard *en banc*, while the court-initiated briefing order was pending, the 90-day certiorari period was tolled, even though rehearing *en banc* was later denied). Nonetheless, given that Turner's motion to reinstate his appeal was filed more than

six months after the deadline for a timely petition for rehearing and his motion was summarily denied without comment, there is no reason to suspect that the Eleventh Circuit "appropriately entertain[ed]" that motion on its merits rather than simply denied it as having come far too late. *Cf. Close*, 336 F.3d at 1284-86 (stating that where a motion to stay the mandate and for rehearing was filed over a month late and was "summarily denied," such amounted to a denial on the ground that the motion was "untimely"); *Creed v. Department of Corr.*, 330 Fed. App'x 771, 772 (11th Cir. 2009) ("[W]here the existence of a procedural bar is clear and no state court has giving any rationale for its summary disposition of the defendant's claim, we will not presume that 'had the [state court] explained its reasoning, it would have reached the merits of [the defendant's] claim.'" (quoting *Kight v. Singletary*, 50 F.3d 1539, 1545 (11th Cir. 1995), and citing *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993))). Therefore, Turner's untimely motion to reinstate his direct appeal and the Eleventh Circuit's summary denial thereof did not have any effect on the running of the period in which to file a timely petition for certiorari. *Cf. Close*, 336 F.3d at 1285-86 ("[O]nly *timely* filed motions for rehearing will toll the time for filing a petition for certiorari (and, therefore, the finality of the conviction." (emphasis original)). As a result, Turner's conviction became final 90 days after the Eleventh Circuit dismissed his direct appeal, *i.e.*, April 24, 2008, and the § 2255(f)(1) limitations period expired

41

one year later, on April 24, 2009.

Turner did not raise his claims alleging that his counsel should have moved to dismiss based upon alleged deficiencies in the indictment or the grand jury procedure until his motion to "amend and supplement", filed April 19, 2010.  Even giving Turner the benefit of the prison mailbox rule, *see Houston v. Lack*, 487 U.S. 266, 275-76 (1988), that reply brief cannot be deemed filed any earlier than April 9, 2010, the date that Turner indicates that he signed it.  (Civ. Doc. 13 at 38).  *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  As such, the instant motion to amend and supplement was filed almost a year after the expiration of the § 2255(f) limitations period.[14]

The timeliness inquiry does not end there, however.  Rather, it is still possible that this claim could be timely – but only if it relates back to the date of filing for the original § 2255 motion and brief.[15]  "Under Rule 12 of the Rules Governing § 2255

---

[14]Even if the 90-day period in which to file a certiorari petition in the Supreme Court began running upon the Eleventh Circuit's denial of the motion to reinstate the appeal on November 14, 2008, the § 2255(f)(1) limitations period would have expired on February 12, 2010.  Accordingly, Turner's motion to amend and supplement filed April 9, 2010 still would have been filed after the expiration of the statute of limitations.

[15]The Government has conceded, correctly, that Turner's original § 2255 motion and supporting brief were timely filed.  However, the Government has not made such a concession as it relates to any of the numerous motions or other documents that Turner has filed after the Government responded to the court's show cause order.  As such, the court is authorized to consider *sua sponte* the timeliness of any claims or allegations filed thereafter, provided that the movant is afforded fair notice and an opportunity to respond prior to dismissal on such ground. *See Gutierrez v. United States*, 2009 WL 4722805, at *2 (S.D. Fla. Dec. 8, 2009); *Day v.*

Proceedings, a district court may apply the Federal Rules of Civil Procedure in a lawful manner not inconsistent with the Rules Governing § 2255 Proceedings." *Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000).  Under Rule 15(c)(1)(B), Fed. R. Civ. P., an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  However, the Eleventh Circuit has explained:

> For a claim to relate back in a § 2255 proceeding, "the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport* [*v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000)]. "Instead, in order to relate back, the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." *Id.* (quotation marks and citations omitted). "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  An amendment that serves to expand facts or cure deficiencies in an original claim relates back to the original claim.  *Dean v. United States*, 278 F.3d 1218, 1223 (11th Cir. 2002) (per curiam).

*Mabry v. United States*, 336 Fed. App'x 961, 963 (11th Cir. 2009).

Turner's claim that his counsel was ineffective because he allegedly failed to raise claims regarding alleged deficiencies in the indictment or the grand jury

---

*McDonough*, 547 U.S. 198, 207-10 (2006) (holding likewise with respect to a 28 U.S.C. § 2254 habeas petition brought by a person in custody pursuant to a state-court judgment).

procedure is distinct, both factually and temporally, from any of the claims that raised in the original § 2255 motion and brief. There, Turner raises several claims alleging that he was induced to plead guilty because his counsel was ineffective.  However, most of those claims boil down to allegations that Turner's counsel failed to seek dismissal of the indictment prior to trial for alleged misconduct by law enforcement officials; failed to investigate, prepare, and present a defense at trial; and failed to "impeach" evidence presented by the prosecution or have it suppressed.  In other words, Turner says that his lawyer failed to have his entire case or at least pieces of the prosecution's evidence thrown out before trial because of police misconduct and that counsel thereafter failed to assemble witnesses and evidence to challenge the Government's version of events, thereby leaving Turner with no option but to plead guilty.[16]  Turner also says that his counsel was ineffective because he failed to move for a downward departure based on Turner's alleged cooperation with the Government.  Nothing in his original § 2255 motion or supporting brief is directed to any supposed facial deficiency in the indictment itself or to any supposed violations in the grand jury procedure that produced it.  Because Turner's instant claim arises from different facts and conduct, it does not relate back to the filing of

---

[16]The gist of Turner's counseled motion to withdraw his guilty plea was likewise that his initial appointed attorney failed to investigate and prepare a defense at trial.  (Crim. Doc. 58 at 6-7).

Turner's original § 2255 motion.  *See Davenport*, 217 F.3d at 1346 (claims alleging

that counsel was ineffective for allowing the defendant to be sentenced based on three

extra grams of cocaine, for relying on a summary lab report rather than requesting full

report, and for failing to advise that a plea agreement might be possible, did not relate

back based on claims that counsel was ineffective for not objecting to drugs as not

being "crack cocaine," for not objecting to drug weight, and for not asserting that the

prosecution had allowed witness to perjure himself).  Therefore, these claims alleging

ineffective assistance of counsel[17] are due to be denied as untimely.[18]

---

[17]Turner also asserts freestanding claims based upon the supposed defects in the indictment and the grand jury procedure.  Turner says that he can raise these claims at any time and that they are not barred by his plea agreement waiver because they are "jurisdictional."  That characterization, however, is incorrect. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[D]efects in an indictment do not depive a court of its power to adjudicate a case."); *Hobby v. United States*, 468 U.S. 339, 345 (1984) ("[T]he absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment.").  Accordingly, any such freestanding claims challenging the validity of his indictment are barred by the waiver in the plea agreement.  But even assuming that these claims are jurisdictional and that as a result they fall outside the plea agreement waiver, the one-year statute of limitations of § 2255(f) applies to claims that challenge subject-matter jurisdiction.  *Williams v. United States*, 383 Fed. App'x 927, 929 (11th Cir. 2010).  Accordingly, any freestanding claims challenging the sufficiency of the indictment or the grand jury procedure are also subject to dismissal as untimely.

[18]The limitations period applicable to § 2255 motions is subject to equitable tolling where a prisoner "'untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'"  *Outler v. United States*, 485 F.3d 1273, 1280 (11th Cir. 2007) (quoting *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (quotation omitted)); *cf. Holland v. Florida*,  130 S. Ct. 2549, 2560 (2010) (holding that the limitations period for a state prisoner to file a § 2254 habeas petition is subject to equitable tolling in appropriate cases).  However, Turner timely filed his original § 2255 motion, and he offers nothing to support that equitable tolling might somehow excuse his filing of any proposed amendments that were filed after the limitations period and do not relate back under Rule 15(c).

Also, while the question has not been authoritatively decided in this circuit, it may be

These claims are also due to be denied on their merits.  As to his claim that his indictment was not signed by the foreman of the grand jury, Turner is simply wrong on the facts. While an unsigned copy of Turner's indictment is the one available for public viewing (Crim. Doc. 1), the original indictment, signed by the grand jury foreman, is filed in the record under seal.  (Crim. Doc. 1-1).  Accordingly, Turner cannot show deficient performance by his counsel or prejudice under *Strickland*.

To the extent that Turner is claiming that his constitutional rights were otherwise violated by the grand jury procedure or by his attorney's failure to raise such an argument, the record fails to support that any such violation occurred.  "An indictment regular on its face ... carries with it a strong presumption of validity." *Ward v. United States*, 694 F.2d 654, 658 (11th Cir. 1982).  The signature of the

---

possible for a defendant to show that it would be a "fundamental miscarriage of justice" for a court to decline to address the merits of otherwise time-barred claims because he is "actually innocent."  *See Rozzelle v. Secretary, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011-12 (11th Cir. 2012).  In order to establish actual innocence in this context, a defendant has the heavy burden to present "new reliable evidence" showing "that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of the new evidence.  *Id.*, 672 F.3d at 1011; *see also Shlup v. Delo*, 513 U.S. 298, 324 (1995); *Kuenzel v. Commissioner, Ala. Dep't of Corr.*, ___ F.3d ___, 2012 WL 3538237 (11th Cir. 2012).  Turner presents no evidence in support of his claim of actual innocence beyond his own insistence of that fact, along with otherwise unsupported allegations that police and perhaps others concocted a scheme to "frame" him.  Such protestations, however, are not "new" because they were available to him at his trial and when he pled guilty.  They also fall well short of being so compelling and reliable that it might be said that no reasonable juror would have convicted him, given the facts to which he stipulated and the evidence against him.  Thus, Turner fails to meet the demanding burden of proving his actual innocence such that the court might be required to consider the merits of his time-barred claims.

grand jury foreperson on an indictment constitutes an attestation to the act of the grand jury. *Id.* While Turner's motion questions whether all procedural regularities were followed in obtaining the indictment against him as well as the "independence" of the grand jury, he has not alleged specific facts indicating any particular requirements were not followed or that other irregularities existed. Accordingly, he has not pled facts that might entitle him to relief. *See Ward*, 694 F.2d at 658-59 (rejecting § 2255 movant's "unsubstantiated claim that [his] indictment was not submitted to the grand jury," where where indictment was properly signed and there was "no credible evidence to indicate" any irregularity); *United States v. Gower*, 447 F.2d 187, 189-90 (5th Cir. 1971) (rejecting claim accusing grand jury of merely "rubber stamping" a proposed indictment, which allegedly deprived defendant of his Fifth Amendment right to an "independently acting grand jury").

### c.     Selective Prosecution

Turner's motion to amend and supplement filed in April 2010 also includes a claim alleging that his indictment was due to be dismissed based upon "selective prosecution." (Civ. Doc. 13 at 22). To the extent that this is assumed to be the basis of an ineffective-assistance claim challenging his guilty plea, it would not be barred by the waiver in his plea agreement. On the other hand, as a freestanding claim, it is barred by that waiver. Either way, it is due to be denied as untimely under § 2255(f)

47

and on the merits, as explained below.

It is true that "the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (internal citations and quotation marks omitted). However, in order to establish a claim of selective prosecution, a defendant must present "clear evidence" displacing the presumption that a prosecutor has acted lawfully. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 489 (1999). Such requires a showing at a minimum that similarly situated individuals who do not share the defendant's protected characteristic were not prosecuted. *See United States v. Armstrong*, 517 U.S. 456, 465-66 (1996). Here, Turner has merely made a bald assertion that he was subjected to selective prosecution, with no other supporting allegations. As such, he has failed to plead facts that might entitle him to relief, on either an ineffective-assistance claim or on a freestanding claim of selective prosecution.

### 4.     Advice as to the Likely Sentence

After the Government responded to the court's show cause order in this case, Turner filed a reply brief in which he claims that attorney Steen was ineffective because he allegedly told Turner that, although he was facing a life sentence if he

went to trial, he would likely receive only a 5-to-10-year sentence if he pled guilty immediately and cooperated with the government by providing information to assist in the prosecution of others.  Turner indicates that he would have not pled guilty if, instead, he had been correctly advised that he was still likely to receive a life sentence.  As explained below, this claim is due to be denied, both because it is untimely and because it is without merit.

As noted above, Turner's § 2255 motion is subject to the one-year statute of limitations in § 2255(f).  While Turner asserts that he was induced to plead guilty by erroneous advice of his counsel that such plea would likely result in a 5-to-10 year sentence, he did not make any such claim in his original § 2255 motion or supporting brief.  (*See* Civ. Docs. 1 & 2).  Rather, he raised that allegation for the first time in his *pro se* brief in reply to the Government's response to the court's show cause order.  (*See* Civ. Doc. 11).  Under the prison mailbox rule, that reply brief cannot be deemed filed any earlier than May 11, 2009, the date that Turner placed on its certificate of service.  As such, the reply brief was filed after the expiration of the § 2255(f) limitations period.  Thus, to be timely, this claim has to relate back to the date of the original motion under Rule 15(c), Fed. R. Civ. P.  *Mederos*, 218 F.3d at 1254; *Mabry*, 336 Fed. App'x at 963.  Turner's claim that his counsel was ineffective because he allegedly advised Turner that he would, or even likely would, receive a 5-to-10 year

49

sentence if he pled guilty is distinct from any of the claims that Turner raises in his original § 2255 motion and brief.   At no time in his original § 2255 motion or supporting brief, however, does Turner hint that he pled guilty in reliance upon erroneous or misleading advice from counsel as to the consequences or the nature of the plea or the plea agreement, pertaining to the length of the sentence or otherwise. Because Turner's instant claim arises from different facts and conduct, it does not relate back to the filing of Turner's original § 2255 motion.  *See Davenport*, 217 F.3d at 1346.

Even assuming this claim is timely, however, it is due to be denied on the merits.  Turner says that, based on his attorney's supposed advice, he thought would likely be facing a 5-to-10-year sentence if he pled guilty and cooperated with the Government.  "[S]ignificant misleading statements of counsel" related to the length of a potential sentence that prompt a defendant to plead guilty can amount to ineffective assistance.   *Cooks v. United States*, 461 F.2d 530, 532 (5th Cir. 1972). However, where a court correctly advises a defendant at the plea colloquy about his potential sentence, including its possible maximum and minimum, a defendant generally cannot establish prejudice on an effective-assistance claim based on an erroneous sentence prediction.  *See, e.g.*, *United States v. Pease*, 240 F.3d 938, 941-42 (11th Cir. 2001); *Harris v. United States*, 769 F.2d 718, 720 n. 1 (11th Cir. 1985);

*see also Hughes v. United States*, 2012 WL 1933668, *2 (M.D. Ga. 2012); *Jones v. United States*, 2012 WL 2061906, *4 (M.D. Ga. 2012);

Prior to Turner pleading guilty, the court expressly told him that Counts 4 and 5 each carried a mandatory life sentence.  (Plea Trans. at 12).  Likewise, the Government stated at that same hearing, that, absent a motion for downward departure under Guidelines § 5K1.1 or 18 U.S.C. § 3553(e) based on substantial assistance, the Government would be recommending the statutory minimum sentence of life imprisonment without release.  (*Id.* at 7).  The court explained to Turner, and he acknowledged that he understood, that whether to recommend such reduction for his cooperation rested solely within the Government's discretion.  (*Id.* at 10).  Finally, it was made clear in the plea agreement both that Turner was facing a life sentence and that any downward departure recommendation from the Government was highly unlikely:

> In the event the defendant provides assistance that rises to the level of "substantial assistance," as that term is used in USSG § 5K.1.1, the United States agrees to file a motion requesting a downward departure in the defendant's sentence.  Should any of the counts of conviction subject the defendant to a mandatory minimum sentence, the United States may also seek a sentence reduction below said mandatory minimum sentence, by including in its motion a recommendation pursuant to the provisions of 18 U.S.C. § 3553(e).  The parties agree that the determination of whether defendant's conduct rises to the level of "substantial assistance" and/or whether defendant's conduct merits consideration under 18 U.S.C. § 3553(e) lies solely in the discretion of

the United States Attorney's Office.  Further more, the parties agree that the decision as to the degree or extent of the downward departure requested, if any, also lies in the sole discretion of the United States. **Due to the statutory minimum sentence of LIFE imprisonment that the defendant faces in entering the above detailed plea, the United States sets forth the following for the record.  As stated on the record previously, the government has made no representation that the defendant will receive a reduction pursuant to USSG § 5K1.1 and/or Title 18, U.S.C. § 3553(e).  Furthermore, the likelihood that the defendant will be able to render substantial assistance is remote for the following reasons: (1) the defendant has chosen to enter a plea at the conclusion of the government's case-in-chief at trial, and thus, there has been a lengthy period of time between the commission of the offenses and the date of trial; (2) the defendant has been in custody from the initial time of his arrest up until the date of this agreement and the government will not agree to the defendant's release from custody in order to render substantial assistance; (3) the government has not yet debriefed the defendant and is currently unaware of any information he will provide will rise to the level of substantial assistance.**

(Plea Agreement at 14-15 (emphasis original).  Turner and his attorney signed that document (Plea Agreement, Doc. 47 at 21), and Turner admitted under oath that he had fully reviewed it with counsel and understood it.   (Plea Trans. at 6, 9-10).  Finally, the court warned Turner, "Recommended sentences, plea bargains, and plea agreements are ... not binding on the judge or the court" (*id.* at 6) and that even if the sentence imposed were "substantially more severe" than the sentence contemplated in a plea agreement, that would not constitute grounds for him to withdraw his guilty plea.  (*Id.* at 11).

Turner asks rhetorically why would he or anyone else facing a mandatory life sentence if convicted at trial plead guilty to charges that would likewise "lock" him into the same life sentence.   However, Turner did have at least the promise of something *potentially* to gain by pleading guilty.   Namely, if convicted at trial, a mandatory life sentence on Counts 4 and 5 was all but assured; if he pled guilty, there was at least a chance, even if it was only remote, that he could get a lesser sentence based on a Government motion for downward departure for substantial assistance under 18 U.S.C. § 3553(e).   Even if that hope was reed thin, and even though it was ultimately unfulfilled, it was still better than none at all.   In any event, it is not this court's role to second guess a defendant's estimation of the potential costs and benefits of pleading guilty.   Regardless of what Turner's attorney allegedly told him, Turner was clearly otherwise made aware of the consequences of his plea, including the potential mandatory life sentence he was facing and that a downward departure motion from the Government under § 3553(e) was not likely.   Because Turner cannot show prejudice under *Strickland* and *Hill*, this claim is due to be denied.   Turner has failed to show that his guilty plea was invalid, based on his attorney's alleged ineffective assistance or otherwise.

5.     Failure to Move for a "[D]ownward [D]eparature [for] [C]ooperation."

Turner claims that his attorney was ineffective because he "should have filed a sentencing motion for downward departure claiming that [Turner] had rendered substantial assistance to the United States pursuant to United States Sentencing Guidelines Section 5K1.1 and 18 U.S.C. § 3553." (Civ. Doc. 12 at 18).  Because this claim of ineffective assistance relating to the sentence cannot logically implicate the validity of his guilty plea, it is barred by the waiver in Turner's plea agreement. [19] Beyond that, this claim is also patently without merit.  Indeed, it shows that Turner does not understand who files motions for downward departure.  Specifically, it is clear that a motion for a downward departure from the guidelines range under § 5K1.1 or from a statutory minimum sentence under § 3553 based on a defendant's substantial assistance may be filed by *the government*, not by the defendant.  *See* USSG § 5K1.1; 18 U.S.C. § 3553(e); *see also Wade v. United States*, 504 U.S. 181, 185 (1992) ("[I]n both § 3553(e) and § 5K1.1 the condition limiting the court's

---

[19]Because Turner cannot show that his guilty plea or his plea agreement was the product of counsel's constitutionally ineffective assistance or was not otherwise knowing and voluntary, the Government is correct that all other claims will be barred by plea agreement waiver under *Williams*, at least to the extent that they raise non-jurisdictional challenges. *See Cotton*, 535 U.S. at 630 ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."); *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) (an unconditional guilty plea does not waive jurisdictional defects); *United States v. White*, 590 F.3d 1210, 1215 (11th Cir. 2009) ("[L]ack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties." (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).

authority gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted."); *United States v. Dorsey*, 554 F.3d 958, 961 (11th Cir. 2009) ("[A] district court cannot grant a downward departure for substantial assistance absent a motion by the government."). Indeed, Turner acknowledged he understood that fact when he pled guilty. (*See* Plea Trans. at 10). Accordingly, the failure of a defendant's counsel to file a motion for downward departure under § 5K1.1 or § 3553(e) was not ineffective assistance.[20] *See United States v. Ortega-Mena*, 96 F.3d 1444 (table), 1996 WL 512154, *1 (5th Cir. 1996).

### 6.    Failure to Appeal

In his motion "to amend and supplement" filed in April 2010, Turner claims that his counsel was ineffective because he "failed to file [Turner's] appeal after [Turner paid] him money down on his appeal to appeal his case against the government." (Civ. Doc. 13 at 4). A lawyer who disregards instructions from his

---

[20]To the extent that Turner might be arguing that his rights have been violated because the *Government* failed to move for downward departure under § 5K1.1 or § 3553(e), any such claim is barred by the waiver in his plea agreement. It is also procedurally barred because § 2255 motions are not a substitute for a direct appeal, *Bousley v. United States*, 523 U.S. 614, 621 (1998), and this claim could have been raised on direct appeal but was not. Finally, such a claim would be without merit. While Turner has made general allegations that he cooperated with the Government after pleading guilty, the Government contends that Turner did not provide any information of any use. Turner has not made specific allegations to support that he provided "substantial assistance" towards the prosecution of anyone else. More to the point, however, is the fact that the Government's refusal to file a § 3553(e) motion is subject to review only to determine whether the refusal was based on an unconstitutional motive, such as race or religion. *Wade*, 504 U.S. at 185-86. Turner has made no such allegations.

client to appeal has acted in a manner that is professionally unreasonable, and prejudice is presumed on such a claim. *See Roe v. Flores-Ortega*, 528 U.S. 470 , 477 (2000). Moreover, a defendant whose counsel was ineffective for failing to appeal is generally entitled to an out-of-time appeal even if he has signed a plea agreement with a waiver that would bar all substantive issues that the defendant identifies in a § 2255 motion. *See Gomez-Diaz v. United States*, 433 F.3d 788, 793-94 (11th Cir. 2005). Even so, this claim is due to be denied because it is untimely and without merit.

First, Turner did not raise this claim until he filed his motion to amend and supplement in April 2010. Thus, it is was filed after the expiration of the § 2255(f) limitations period. The claim also does not relate back under Rule 15(c), Fed. R. Civ. P., because Turner did not previously raise any allegations that his counsel was ineffective for failing to appeal or was otherwise ineffective on appeal. Accordingly, the claim is time-barred. Second, it is undisputed that Turner's retained counsel did, in fact, appeal Turner's conviction to the Eleventh Circuit. Therefore, Turner cannot show deficient performance based on an alleged failure to appeal.[21]

---

[21]Turner's direct appeal was dismissed for want of prosecution, based on the failure to timely file a Transcript Order Form. However, Turner has not pled that such omission was the fault of counsel or that it constituted ineffective assistance. It might be assumed that such failure did amount to deficient performance and that prejudice would be presumed because Turner's direct appeal was effectively rendered non-existent. *See Hardaway v. Robinson*, 655 F.3d 445, 449 (6th Cir. 2011); *Johnson v. Champion*, 288 F.3d 1215, 1228 (10th Cir. 2002); *cf. Dakane v.*

Case 2:07-cr-00114-VEH-SGC   Document 84   Filed 08/31/12   Page 57 of 63

**B.      The *Bailey* Claim**

In a "memorandum of law" filed April 9, 2009, Turner claims that he is entitled to relief on the theory that he is "actually innocent of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2)" based on *Bailey v. United States*, 516 U.S. 137 (1995).  (Civ. Doc. 7).

In *Bailey*, the Supreme Court held that a conviction under former 18 U.S.C. § 924(c)(1) for "use" of a firearm "during and in relation to any crime of violence or drug trafficking crime" was not satisfied by a showing of "mere possession."  516 U.S. at 143.  Rather, the government had to show "active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense."  *Id.* at 142.  In response, Congress amended § 924(c)(1) in 1998 to provide for a five year minimum sentence for anyone who "uses or carries a firearm, or who, in furtherance of [a crime of violence or a drug trafficking crime] possesses a firearm."  *See Abbott v. United States*, 131 S. Ct. 18, 25 (2010).

Based on the § 2255(f) limitations period calculations set forth previously, this claim is timely, even without the relation-back doctrine.  It might be further assumed that Turner could assert a *Bailey* claim alleging that his guilty plea was not knowing and voluntary, *see Bousley*, 523 U.S. at 621, without running afoul of the waiver in

---

*United States Attny. Gen.*, 399 F.3d 1269, 1274-75 (11th Cir. 2005) (counsel's failure to file any appeals brief in the context of an immigration proceeding carries a rebuttable presumption of prejudice).  Still, any such claim would be barred as untimely under § 2255(f).

57

his plea agreement.  Nonetheless, this claim is without merit.  Turner argues that *Bailey* might invalidate his convictions on Counts 8, 9, and 10 for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), for which he was sentenced to ten years imprisonment under 18 U.S.C. § 924(a)(2).  However, neither *Bailey*, *Bousley*, nor *In re Hanserd*, 123 F.3d 922 (6th Cir. 1997), the other case Turner cites on this issue, has any bearing on § 922(g) convictions.  Those cases all involve convictions under former § 924(c) where it was alleged that the defendant "used" a firearm during and in connection with a crime of violence or drug trafficking.  By contrast, "use of a firearm is not an element of § 922(g), which encompasses mere possession."  *United States v. Singleton*, 182 F.3d 7, 10 (D.C. Cir. 1999); *see also Bailey*, 516 U.S. at 143 (citing § 922(g) and other federal statutes prohibiting "possession" of a firearm as distinguishable from the "use" element of former § 924(c)).  It is true that Count 7 charged Turner with "carrying" a firearm during and in relation to a drug trafficking offense, but that was an alleged violation of the post-*Bailey*, 1998 amended version of § 924(c)(1)(A)(i).  Turner fails to explain how *Bailey* might vitiate his guilty plea conviction to that count.  This claim is due to be denied.

## C.     The *Brady* Claim

In his April 2010 motion to amend and supplement, Turner includes a claim

alleging that the Government failed to disclose evidence in violation of his Fifth

Amendment due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963)  (Civ.

Doc. 13 at 11, 38).  This claim is barred by both the plea agreement waiver and by the

statute of limitations.  It also fails on the merits because Turner fails to allege what

ostensibly exculpatory evidence the prosecution supposedly withheld or any other

facts forming the basis of the claim.

### D.     The *Shepard* Claim

On August 8, 2011, Turner filed a fourth motion "to amend and supplement"

(Civ. Doc. 15).  raising a claim that he is entitled to be resentenced based on *Shepard*

*v. United States*, 544 U.S. 13 (2005).  *Shepard* held that when attempting to ascertain

whether a defendant's prior conviction qualifies as a "violent felony" for purposes of

the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and the offense does

not inherently qualify and the defendant does not admit necessary predicate facts, a

court may not rely upon police reports or similar materials proffered by the

prosecution.  *See id.*, 544 U.S. at 20-21, 24.  Turner, however, was not sentenced

under the ACCA.[22]   Nonetheless, he seems to contest the mandatory life sentence

---

[22]The ACCA converts the 10-year maximum sentence for a felon-in-possession
conviction under 18 U.S.C. § 922(g), *see* 18 U.S.C. § 924(a)(2), to a 15-year mandatory
minimum sentence where the defendant has "three previous convictions ... for a violent felony or
a serious drug offense, or both ...."  18 U.S.C. § 924(e)(1).  Turner did plead guilty to Counts 8,
9, and 10, which alleged violations of § 922(g)(1).  However, the court sentenced him to 10-year
concurrent sentences on those counts, so the ACCA clearly was not  applied.

enhancement on Counts 4 and 5, charging distribution of 50 or more grams of a substance or mixture containing cocaine base, *see* 18 U.S.C. §§ 841(a)(1) and (b)(1)(A), based upon the fact that such convictions occurred "after two or more prior convictions for a felony drug offense [had] become final." 21 U.S.C. § 841(b)(1)(A); *see also* 21 U.S.C. § 851. A "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State ... that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). In particular, Turner appears to claim, relying upon *United States v. Alston*, 611 F.3d 219 (4th Cir. 2010), that one of his prior drug convictions could not have been used to enhance his sentence because it was based upon an *Alford* plea, *i.e.*, a guilty plea where he also maintained his innocence. *See North Carolina v. Alford*, 400 U.S. 25 (1970); *Blohm v. CIR*, 994 F.2d 1542, 1546 n. 6 (11th Cir. 1993).

Turner is not entitled to relief on this claim. First, it is time-barred under § 2255(f). Second, it is precluded by the waiver in the plea agreement. Third, it could have been raised on direct appeal but was not, so it is not a proper subject of a § 2255(f) motion. Fourth and finally, it is without merit. Turner offers a copy of state-court plea documents tending to indicate that, on January 4, 2000, he entered an *Alford* plea to unlawful possession of a controlled substance, a Class C felony under

60

Alabama law.  (*See* Civ. Doc. 15 at 28-29); *see also* Ala. Code §§ 13A-12-212; *id.,* § 13A-5-6.  However, regardless of whether his guilty plea in that case was of the *Alford* variety, that crime was inherently and categorically a "felony drug offense," such that the conviction could be used to enhance Turner's sentence under 21 U.S.C. §§ 841(b)(1)(A) and 851.  *See United States v. Mouzone*, ___ F.3d ___, ___, 2012 WL 3039215, *10 (4th Cir. 2012); *United States v. Garrett*, 292 Fed. App'x 3, 7 (11th Cir. 2008).  This claim is due to be denied.[23]

### E.  Claims Challenging Titles 18 and 21 of the United States Code, including 18 U.S.C. § 3231.

Finally, on May 21, 2012, Turner raised his fifth and final motion to "amend and supplement."  (Civ. Doc. 16).  In that 74-page filing, Turner claims, relying upon *Bond v. United States*, 131 S. Ct. 2355 (2011), that Titles 18 and 21 of the United States Code, which contain the relevant federal criminal statutory provisions pursuant to which he was convicted and sentenced, violate the Fifth and Tenth Amendments.  (*Id.* at 2).  Turner also claims that Public Law 80-772, which includes provisions

---

[23]In his August 2011 motion to amend and supplement, Turner also copied the objections to the PSI report that his counsel filed prior to sentencing.  (*See* Civ. Doc. 15 at 3-6; Crim. Doc. 53).  To the extent that Turner may be attempting to reassert those same arguments in support of § 2255 relief, they are due to be denied.  Like his *Shepard* claim, they are also untimely under § 2255(f), precluded by the plea agreement waiver, and could have been raised on direct appeal. Further, those objections were ruled upon at sentencing, and this court need not now revisit them. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 & n. 3 (11th Cir. 2000); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969).

codified as the federal criminal jurisdictional statute, 18 U.S.C. § 3231, was not lawfully enacted by Congress. These claims are due to be denied as untimely under § 2255(f), notwithstanding that they challenge the court's jurisdiction. *Williams*, 383 Fed. App'x at 929; *Gaines v. Warden, FCC Coleman-USP-1*, 380 Fed. App'x 812, 814 (11th Cir. 2010).

The claims are also due to be denied on the merits. Turner's reliance on *Bond* to establish a Tenth Amendment claim is misplaced, "because in *Bond* the Supreme Court decided that individuals had standing to challenge statutes under the Tenth Amendment, not that any statute at issue in the case was a violation of the Tenth Amendment. No decision of the Supreme Court or [the Eleventh Circuit] supports [the] argument that [Title 18 or 21] violate[ ] the Tenth Amendment." *United States v. Schumaker*, 2012 WL 1886481, *5 (11th Cir. 2012) (unpublished); *see also Smith v. United States*, 2011 WL 6013805, *2 (M.D. Fla. 2011). Turner also fails to articulate any specific substantive argument to support that those statutes violate the Fifth Amendment. Likewise, the Eleventh Circuit has recently rejected the argument that 18 U.S.C. § 3231 was not lawfully enacted as "unbelievably frivolous." *Schumaker*, 2012 WL 1886481, *2; *see also United States v. Penwell*, 455 Fed. App'x 181, 183-84 (3d Cir. 2011); *United States v. Young*, 428 Fed. App'x 9, 11 (D.C. Cir. 2011); *United States v. Toney*, 637 F.3d 1153, 1158 n. 9 (10th Cir. 2011);

*United States v. Farmer*, 583 F.3d 131, 151-52 (2d Cir. 2009).  Turner is not entitled to relief on these claims.

## III.   CONCLUSION

Based on the foregoing, Turner's motions to amend and supplement his § 2255 motion (Civ. Docs. 13, 14, 15, and 16) are due to be **GRANTED**, such that all of the claims therein are due to be considered by the court.  However, all of Turner's claims for relief under § 2255 are due to be **DENIED**, for the reasons set forth herein. Accordingly, this § 2255 case is due to be **DISMISSED WITH PREJUDICE**.  A separate final judgment will be entered.

**DONE** this the 30th day of August, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge